**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



**FILED**

FEB 11 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| IQBAL SINGH GILL; et al., | No. 09-70638 |
| Petitioners, | Agency Nos.    A095-605-285 |
| v. | A095-605-286 |
| | A095-605-288 |
| ERIC H. HOLDER, Jr., Attorney General, | AMENDED MEMORANDUM[*] |
| Respondent. | |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted January 13, 2014
San Francisco, California

Before: GRABER and NGUYEN, Circuit Judges, and DEARIE, Senior District
Judge.[**]

Iqbal Singh Gill petitions for review of a decision of the Board of

Immigration Appeals (BIA) denying his application for asylum, withholding of

---

[*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**]    The Honorable Raymond J. Dearie, Senior District Judge for the U.S.
District Court for the Eastern District of New York, sitting by designation.

removal, and protection under the Convention Against Torture (CAT).[1] We have jurisdiction pursuant to 8 U.S.C. § 1252, and we deny the petition.

1. Substantial evidence supports the immigration judge's (IJ) and BIA's adverse credibility determination as to Iqbal's testimony. *See Chand v. INS*, 222 F.3d 1066, 1072 n.7 (9th Cir. 2000) (noting that if the BIA adopted the IJ's decision while adding its own reasons, we review both decisions). The IJ and the BIA identified discrepancies regarding whether Iqbal became politically active in India in the 1980s, as he originally claimed in his application and testimony before an asylum officer, or whether he became active only in 1993 while living in Ghana, as he testified at the hearing. The IJ and the BIA also relied on discrepancies as to whether the police had continuing interest in him. These discrepancies are material and go to the heart of Iqbal's asylum claim. *See Singh v. Gonzales*, 439 F.3d 1100, 1108 (9th Cir. 2006) ("An inconsistency goes to the heart of a claim if it concerns events central to petitioner's version of why he was persecuted and fled."); *Li v. Ashcroft*, 378 F.3d 959, 962 (9th Cir. 2004) ("An adverse credibility ruling will be upheld so long as identified inconsistencies go to the heart of the asylum claim."

---

[1] Harpreet Kaur Gill, Iqbal's wife, and their two sons, Simranjit Singh Gill and Satinderpal Singh Gill, are derivatives on Iqbal's application for asylum and did not independently file their own applications. On July 16, 2013, Simranjit was dismissed from this petition for review. Accordingly, this memorandum disposition does not apply to Simranjit.

(brackets and internal quotation marks omitted)). The remaining evidence in the record does not compel the conclusion that Iqbal and his family are eligible for asylum relief.

2. The IJ did not violate Iqbal's due process rights by relying on the asylum officer's notes and the Assessment to Refer, in conjunction with the asylum officer's testimony, in making the adverse credibility findings. Iqbal fails to demonstrate that the proceedings were "fundamentally unfair" and that he was prejudiced. *Colmenar v. INS*, 210 F.3d 967, 971 (9th Cir. 2000). At the asylum interview, Iqbal was under oath and had an interpreter. At the merits hearing, he had an opportunity to explain the inconsistencies, and the asylum officer testified and was subject to cross-examination.

3. Substantial evidence supports the BIA's determination that Iqbal failed to establish eligibility for protection under the CAT. The CAT claim rested on the statements and testimony made by Iqbal, whom the BIA permissibly found to be not credible. *See Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003) (affirming the denial of CAT relief where it was based on the same discredited evidence in support of the asylum claim). Further, nothing in the record compels the conclusion that it is more likely than not that Iqbal would be tortured "at the instigation of or with the consent or acquiescence of a public official or other

3

person acting in an official capacity" upon removal to India. 8 C.F.R. §§ 1208.16(c)(2), 1208.18(a)(1); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). To the contrary, following Iqbal's alleged detention and torture in 1998, he was able to enter and leave India without being arrested by the authorities at the airport. Moreover, Iqbal testified that only certain police want to arrest him, suggesting an ability to relocate within India. *See* 8 C.F.R. § 1208.16(c)(3)(ii) (stating that evidence of ability to relocate is relevant in determining eligibility for CAT relief); *Kamalthas v. INS*, 251 F.3d 1279, 1282 (9th Cir. 2001) ("[A]ll evidence relevant to the possibility of future torture shall be considered . . . ." (emphasis omitted)).

**PETITION DENIED.**